**Patrick James JEFFRIES, Plaintiff,**

v.

**Amos REED, et al., Defendants.**

**No. C–84–697–RJM.**

United States District Court,
E.D. Washington.

March 27, 1986.

Patrick James Jeffries, pro se.

Paul Silver, Asst. Atty. Gen., State of Wash., Olympia, Wash., for defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ROBERT J. McNICHOLS, Chief Judge.

Before the court is defendants' Motion for Summary Judgment (Ct.Rec. 61) and plaintiff's Cross-Motion for Summary Judgment (Ct.Rec. 70). Plaintiff, a Death Row inmate, challenges the constitutionality of his transfer to the Intensive Management Unit (IMU) and of the conditions of incarceration therein.

*Transfer to Intensive Management Unit*

Plaintiff initially claims that defendants violated his rights by transferring him to IMU solely because he is subject to the death penalty. Death Row inmates are the only prisoners incarcerated in IMU for reasons other than institutional misconduct. Plaintiff has been placed there because, in light of his sentence, he inherently imposes a security risk. Plaintiff contends that he has a protected liberty interest under the Fourteenth Amendment and under state law in not being transferred without some type of hearing.

In *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the United States Supreme Court defined the contours of a prisoner's rights regarding

transfers. Initially, the Court noted that a liberty interest protected by the Fourteenth Amendment could arise out of either the Due Process Clause itself or from state law. *Id.*, 103 S.Ct. at 869. In addressing the Due Process Clause issue, the Court stated "It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Id.* at 870. The change in the inmate's freedoms arising out of a transfer from the main population to administrative segregation is not significant enough to implicate the Due Process Clause. *Id.* Applying this standard to the present facts, this court finds that plaintiff's transfer to IMU for administrative reasons (security and protection) without a hearing does not state a claim for relief under the Due Process Clause.[1]

■ Plaintiff also correctly notes that the Supreme Court in *Helms* found that the state may create a protected liberty interest through statutory or regulatory measures. *See id.* Unlike the inmates in *Helms*, however, Mr. Jeffries has failed to demonstrate that Washington has enacted any laws which provide such a protected interest. In fact, state law requires that all Death Row inmates be confined in a segregation unit. R.C.W. 10.95.170. Accordingly, this court finds that Washington law does not create a protected liberty interest regarding the location of plaintiff's confinement. In light of the above conclusions, defendants are entitled to summary judgment on plaintiff's claim of Fourteenth Amendment violations arising out of his transfer to IMU.

### Access to the Courts

■ Plaintiff alleges that defendants have unconstitutionally deprived him of his right of access to the courts by failing to provide him with adequate access to legal research materials, and to supplies such as paper and pens. The existence of prisoners' rights to meaningful access to the courts is well established. *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). "It is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed." *Johnson v. Avery*, 393 U.S. 483, 485, 89 S.Ct. 747, 749, 21 L.Ed.2d 718 (1969). Courts must focus upon whether an inmate's ability to prepare a petition or complaint is being protected. *Bounds, supra*, 430 U.S. at 828, 97 S.Ct. at 1498. *See also Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974).

■ Under this right of access, the state must provide sufficient paper and writing materials to allow inmates to draft legal documents. *Bounds, supra*, 430 U.S. at 824–25, 97 S.Ct. at 1496–97. The court finds plaintiff has failed to demonstrate that any alleged shortages of materials have interfered with his right of access. Plaintiff's voluminous pleadings attest to the adequacy of the supply of paper and ink. Moreover, the court finds that defendants' actions in cutting down the barrels of the pens is justified in light of their security concerns.

■ In regard to plaintiff's access to legal reference materials, the court again finds that plaintiff has failed to establish a factual basis for his claim of a constitutional violation. Although security concerns may preclude defendants from allowing Mr. Jeffries to actually visit the law library, they must provide him with some alternative means of attaining the desired books. The request system through which an IMU inmate may prioritize the materials which he seeks satisfactorily provides such access. Security considerations and the need to provide access to the books to all inmates justify limiting inmates to possess-

---

1. Plaintiff contends that, because the conditions in IMU are more restrictive than where he was previously incarcerated, his transfer was punitive, not administrative. In this case, the character of the transfer must be determined, however, from the reasons for the change, not from the consequences.

ing a maximum of five items at one time. Delays in receiving materials or the fact that such materials occasionally may not be available when requested do not make the present system inadequate under constitutional standards.

Defendants have satisfied their initial burden of demonstrating that they are providing plaintiff with adequate access to legal research materials and to supplies. Because plaintiff has failed to come forward with specific facts showing that genuine issues remain for trial, defendants are entitled to summary judgment on the issue of plaintiff's access to the courts. *See* Fed.R. Civ.P. 56(c) and (e); *Feldman v. Simkins Industries, Inc.,* 679 F.2d 1299 (9th Cir. 1982).

### Personal Property

■ Plaintiff seeks relief under § 1983 for confiscation of certain items of his personal property. It is clearly established that such allegations do not state a claim under the Civil Rights Act when plaintiff possesses an adequate post-deprivation remedy under state law. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In Washington, plaintiff may seek recovery for any such property loss under common law tort theories. *See Franklin v. State Welfare Division,* 662 F.2d 1337, 1345–46 (9th Cir.1981). Moreover, plaintiff cannot successfully categorize his claim as a violation of the Fourth Amendment prohibition of unreasonable search and seizure because the Supreme Court has held that inmates do not possess such a right in relation to their prison cells. *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Accordingly, plaintiff has failed to state a claim for relief under § 1983 in relation to any alleged deprivations of personal property.

### Inspection of Mail

Plaintiff contends that his "legal mail is being inspected by IMU staff." The Ninth Circuit recently addressed a similar issue in *Royse v. The Superior Court of the State of Washington,* 779 F.2d 573 (9th Cir.1986). In *Royse,* the plaintiff challenged the institutional policy of inspecting all mail sent by inmates of WSP to judges or court officials. The court found that "the inspection of inmate mail for contraband does not constitute mail 'censorship' governed by the *Procunier* [*v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974)] test." *Id.* at 575. Royse based his due process claim on alleged denial of access to the courts. In rejecting plaintiff's contention, the court found that the inspection procedure utilized did not delay or hinder the inmate's communication with the court nor did it interfere with his ability to prepare legal documents. *Id.* To the extent that Mr. Jeffries relies on the Due Process Clause as a basis for his action, the claim is controlled by *Royse* and this court must conclude that no violation has occurred.

■ Mr. Jeffries states that the inspection also violates his rights under the First Amendment free speech protection and under the Fourteenth Amendment Equal Protection Clause. The court finds that plaintiff has failed to present any factual contentions which would sustain an action on these bases. Accordingly, the challenged inspection procedure does not, in this case, state a claim for relief.

### Strip and Body-Cavity Searches

Relying on the Fourth Amendment, plaintiff challenges the constitutionality of the digital rectal search which he underwent prior to being transferred to IMU, and the strip and visual body-cavity searches which he undergoes each time he leaves his cell. In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court established the test to be applied to visual cavity searches. Noting that the Fourth Amendment prohibits only unreasonable searches and seizures, the Court held that the Constitution "requires a balancing of the need for the particular search against the invasion of personal rights the search entails." *Id.* at 559, 99 S.Ct. at 1884. The Court upheld the policy of subjecting inmates, after con-

tact visits, to strip searches (including visual cavity searches), without a probable cause showing. *Id.* at 560, 99 S.Ct. at 1885.

■■■ Thus the issue in the present case is whether the level of security required in IMU outweighs the intrusiveness of strip searches and visual and manual body-cavity searches. As the State notes, IMU is the most secure segment of the Washington institutional structure. Additionally, as this court previously acknowledged, Death Row inmates present particular and heightened security risks. The court is further guided by its recognition that it does not possess expertise in the area of administering the needs of a penal institution.

In light of the high degree of precautions necessary in IMU, the court finds that the balance between the need for the searches and the invasion of Mr. Jeffries' personal rights tips in favor of the State. Defendants must prevail on the issue of the reasonableness of the searches.

### Denial of Association with Other Inmates

■■■ Plaintiff asserts that he has no contact with other inmates, in violation of the First, Sixth, and Fourteenth Amendments. The Sixth Amendment claim rests upon Mr. Jeffries' allegations that he cannot interact with the "jail house lawyers." Initially, it must be noted that indigent civil litigants have no constitutional right to have counsel appointed to represent them. *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir.1980). The lack of access to such legal assistance could state a constitutional violation if it resulted in denial of access to the courts. This court has already determined, however, that plaintiff has adequate means of presenting his contentions to the court. Accordingly, plaintiff has not stated a claim under the Sixth Amendment.

Mr. Jeffries raises the First Amendment associational right by itself and as interpreted under the Equal Protection Clause as additional grounds for his claim.

In analyzing Equal Protection challenges, courts have traditionally applied two standards: strict scrutiny and rational basis. If the classification involves a suspect group or impinges on a fundamental right, strict scrutiny is utilized. *Hoffman v. United States*, 767 F.2d 1431, 1434–35 (9th Cir.1985). If neither of these factors is involved, the courts apply the rational basis standard. *Id.* at 1435.

■■■ The classification involved in the present case is Death Row Inmates. The court finds that this group is not one which gives rise to a suspect classification. The right involved is freedom to associate with other prisoners for informative and recreational purposes. Prisoners retain those First Amendment protections that are not inconsistent with their status as inmates and, thus, institutional policies which impinge upon these rights must be examined in light of the legitimate policies and goals of the correctional system. *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Expanding upon this concept, the Supreme Court stated:

First Amendment associational rights, while perhaps more directly implicated by the regulatory prohibitions, likewise must give way to the reasonable considerations of penal management. As already noted, numerous associational rights are necessarily curtailed by the realities of confinement. They may be curtailed whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations, whether through group meetings or otherwise, possess the likelihood of disruption to prison order or stability, or otherwise interfere with the legitimate penological objectives of the prison environment. As we noted in *Pell v. Procunier, supra,* at 823 [94 S.Ct. at 2804], "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves."

*Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 132, 97 S.Ct. 2532, 2541,

53 L.Ed.2d 629 (1977). *See also Rizzo v. Dawson,* 778 F.2d 527 (9th Cir.1985). In light of the restricted nature of plaintiff's associational rights within WSP, the State need demonstrate only that any restrictions imposed on those rights are reasonable. *Jones, supra,* 433 U.S. at 130, 97 S.Ct. at 2540. Thus, this court must apply the rational basis test to the present facts.

■ In *Western & Southern Life Ins. Co. v. State Bd. of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981), the Court set forth a two-step analysis to be applied to Equal Protection challenges. First, the court must decide whether the challenged legislation bears a legitimate state purpose. Second, if a permissible purpose is found, the court must determine whether it was "reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose[.]" *Id.* ((*quoted in Hoffman, supra,* 767 F.2d at 1436–37) (*footnote omitted*)). In the context of the present challenge, this court finds that preservation of institutional security constitutes a legitimate state interest. *See Jones, supra,* 433 U.S. at 132, 97 S.Ct. at 2541. Moreover, defendants acted reasonably in restricting contact between Death Row inmates and other prisoners as a means of providing the heightened security required in light of plaintiff's sentence. "There is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence." *Id.* at 136, 97 S.Ct. at 2543.

Plaintiff therefore has failed to establish a violation of his First Amendment right of freedom of association or of his right to equal protection under the Fourteenth Amendment. As noted earlier, Mr. Jeffries also has not stated a claim under the Sixth Amendment. In light of these conclusions, defendants must prevail on the issue of plaintiff's lack of contact with other inmates.

#### Contact Visits

■ As another basis for relief, plaintiff contends that denial of contact visits with family, friends, and attorneys violates his First and Fourteenth Amendment rights. In light of the above discussion of the restricted nature of plaintiff's First Amendment associational rights, the court concludes that denial of contact during visitation periods is not an unreasonable response to legitimate institutional concerns.

■ To establish a Fourteenth Amendment violation, plaintiff must demonstrate that he has some constitutionally protected interest in contact visits. In *Block v. Rutherford,* 468 U.S. 576, 104 S.Ct. 3227, 3234, 82 L.Ed.2d 438 (1984), the Court held "that the Constitution does not require that detainees be allowed contact visits when responsible, experienced administrators have determined, in their sound discretion, that such visits will jeopardize the security of the facility." Although *Block* involved pretrial detainees, the Court indicated that this group should be treated similarly to convicted inmates. *See id.,* 104 S.Ct. at 3233. Accordingly, this court finds that the Fourteenth Amendment, in and of itself, does not provide plaintiff with a protected interest in contact visits.

■ Plaintiff further claims, however, that he has a state-created right by virtue of W.A.C. 275–80–840, which provides that visitation shall not be interfered with as a sanction for infraction of rules not related to visiting. This argument is inapposite, as even if this regulation did give rise to a protected interest in visitation *per se,* nowhere in the W.A.C. are contact visits specifically mentioned. Such a vague standard is not sufficient to give rise to a state-created interest.

■ Additionally, plaintiff has failed to demonstrate how his inability to physically contact visiting attorneys has interfered with his access to the courts. Because such restriction does not unduly impinge upon his ability to communicate with counsel, it cannot be the basis of a § 1983 claim. In light of all of the above, plaintiff has not substantiated his contention that lack of

contact visits results in a constitutional violation.

### Telephone Privileges

Because Mr. Jeffries is limited to making phone calls only during certain hours of the day, he contends he is impermissibly being denied access to the courts and counsel. In analyzing such claims, the courts have looked to whether institutions provide reasonable accommodations for inmates' use of telephones. *See, e.g., Feeley v. Sampson,* 570 F.2d 364 (1st Cir.1978). The exact formulation of such service must remain with the prison administrators, subject to scrutiny by the courts for the implementation of unreasonable restrictions. *Id.* at 374. In IMU, at least three times a week between the hours of 8:00 a.m. and 4:00 p.m., inmates are allowed to place collect calls to their attorneys. Such a schedule is not so unreasonably restrictive or repressive as to deny plaintiff adequate access to counsel and the courts. On the present facts, plaintiff has not stated a claim for relief.

### General Assertions Regarding Quality of Life

Plaintiff also challenges various other conditions of incarceration in IMU, including, among others, denial of smoking privileges, lack of a desk, shelves, mirrors, and hangers in the cell, and provision of coveralls rather than regular jail-house clothing. None of the alleged violations concerns any items which could be considered "necessities of life." Because plaintiff is not being denied adequate food, clothing, shelter, sanitation, personal safety, or medical care, any such deprivations do not rise to the level of an Eighth Amendment violation. *Hoptowit v. Ray,* 682 F.2d 1237, 1258 (9th Cir.1982).

### Conclusion

In light of the above rulings, defendants' Motion for Summary Judgment is GRANTED. Plaintiff's Cross-Motion for Summary Judgment is DENIED. The complaint and claims therein are DISMISSED WITH PREJUDICE. The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.