Donald HILL and Raymond
Wilkins, Plaintiffs,

v.

Steve KOON; et al., Defendants.

No. CV–N–87–174–ECR.

United States District Court,
D. Nevada.

Feb. 21, 1990.

Donald Hill, in pro. per.

Raymond Wilkins, in pro. per.

Brian McKay, Atty. Gen. for Nev., Carson City, Nev., for defendants.

ORDER

EDWARD C. REED, Jr., Chief Judge.

This is a 42 U.S.C. § 1983 action brought by plaintiffs Hill and Wilkins, who are inmates at Nevada State Prison, against Steve Koon, Associate Warden at the prison, and other prison employees, as defendants, for violation of plaintiffs' constitutional rights on account of digital anal body cavity searches of plaintiffs at the prison. A trial before the Court was conducted on November 7–9, 1989. Plaintiffs represented themselves, pro se. Defendants were represented by Deputy Attorney General Gerald Weiss.

The action is brought because of digital anal body cavity searches of both plaintiffs conducted on March 8, 1987, by Physician's Assistant Daryl Butler and such a search conducted on plaintiff Hill on April 9, 1987, by Physician's Assistant Rumaldo Rodriguez. Each of the subject searches was conducted at the direction of defendant Koon.

The March 8, 1987, searches occurred after plaintiffs had participated in the regular inmate visitation period that day at the prison. Prior to visitation hours on March 8, Mr. Koon had received information from both within and without the prison that drugs would be passed by visitors to inmates during the visitation period that day. He left instructions with Sgt. Janice Benzler, who was in charge of supervision of the visiting room, to be on the alert for drug trafficking and that if such was suspected she was to call Mr. Koon to come to

the prison to deal with the matter. Mr. Koon was in charge of the prison as Acting Warden that day. His usual duties included supervision of the prison Security Squad which was responsible to seek to prevent drug trafficking at the prison. Security in the visiting room had been beefed up for the day's visitation so that there would be close surveillance of inmates receiving visitors.

When Sgt. Benzler observed in the visitor's room that day, eight out of sixteen inmates who were at that time under investigation for drug trafficking at the prison (including both plaintiffs), she called for Mr. Koon. He came to the visiting room to observe the inmates' activities for himself and to determine what action ought to be taken to detect possible exchange of drugs during the visitations.

Close observation by the prison personnel disclosed no exchange of drugs to prisoners. There were some very general observations describing the activities of the inmates and visitors in the visiting room that day as indicating possible narcotics trafficking. At the end of the visitation period the visitors departing appeared nervous.

Plaintiff Hill's visitor that day was his mother, Vivian Haire, (also known as Vivian Burkett). Information had previously come to the attention of prison officials including Mr. Koon and defendants Baca and Jackson that Ms. Burkett was bringing narcotics into the prison for inmates during visitations. Plaintiff Wilkins' visitors that day were his girl friend, Janice Baldy, and his mother, Rosalie Jones. According to information received by the same prison officials, Rosalie Jones was also suspected of bringing drugs into the prison during visitations.

At the conclusion of their visitations both plaintiffs received a visual strip search and search of their clothing. This was a routine practice following such visits. These searches disclosed no contraband.

Mr. Koon in the meantime, however, had received information from defendant Baca that a sandwich baggie had been found in the visiting room cesspool after the visita-

tions that day indicating that drugs had been smuggled in to the prison during the visitation. Plaintiffs were then taken to 7 Post, a sort of headquarters area at the prison for interviews by Mr. Koon. During the interviews Mr. Koon received an anonymous telephone call indicating that inmates participating in visitation that day might have concealed drugs in their body cavities. Mr. Koon confronted plaintiffs with this information and stated that he intended to have a digital body cavity search conducted on each of them.

Drugs were commonly smuggled in to the prison at that time by visitors who brought the drugs in plastic baggies or tubes inserted in their own body cavities, removed such containers in the restroom and then transferred them to the inmates during some sort of diversion by inmates in the visiting room or during a kiss. The inmates would then insert the baggies or tubes in their own anal cavities. Hiding of drugs in body cavities is common among inmates.

At the time of the confrontation at 7 Post both plaintiffs were given the opportunity to surrender any contraband in their possession and denied any such possession.

Mr. Koon thereupon ordered over plaintiffs' protests that a digital anal body cavity search be conducted on each of them. Plaintiffs refused to consent to the body cavity searches.

Each of the plaintiffs in turn was then taken to the infirmary adjoining 7 Post where the digital body cavity searches were conducted by the Physician's Assistant, Mr. Butler. Mr. Butler was advised that Mr. Koon had issued the order for the searches because of reason to believe the inmates had secreted drugs obtained in the visiting room. Each of the searches was businesslike and conducted in a medical setting in hygienic manner with the Assistant using sterile gloves and lubricating oil. Each of the examinations was brief, lasting no more than twenty seconds and probably less than that. The searches on March 8 were observed only by defendant Jackson, a Correctional Officer and member of the prison Security Squad, who escorted each of the plaintiffs in turn to the examining room.

The search of plaintiff Hill disclosed nothing and he was released to the prison general population.

The first search of plaintiff Wilkins disclosed an irregularity (something hard) in the anal cavity which it was believed by the Physician's Assistant might be concealed drugs. After consultation Mr. Koon ordered a second digital anal body cavity search of plaintiff Wilkins which again indicated something unusual in the rectum. Under some coercion Mr. Wilkins then consented to an X–Ray search which was conducted without any contraband being disclosed.

The Physician Assistants both testified that digital body cavity searches are inconclusive in determining the presence of drugs because fingers are only so long and drugs may be concealed above their reach. X–Rays in these circumstances may or may not disclose concealed drugs. Subsequent to the negative X–Ray, Mr. Wilkins was also released back to the prison general population.

The April 9, 1987, anal body cavity search involves only plaintiff Hill.

On that date information was forwarded to Mr. Baca that there was a large amount of activity in F Wing (where Mr. Hill was housed) in the vicinity of the cell of an inmate named Layton. Mr. Baca and another Security Squad member hurried to F Wing and searched Layton's cell finding no drugs and no evidence Layton or his cellmate possessed drugs or were using them. The officers then checked other inmates in the wing. When they arrived at Mr. Hill's cell they found that Mr. Hill and his cellmate appeared to be nervous and excitable. When Mr. Hill and his cellmate held out their arms on order of Mr. Baca, pin point, fresh red needle marks were observed inside their elbows. Such marks are evidence of drug use. Mr. Hill was then taken by Mr. Baca to 7 Post for further interrogation. The red needle marks were also observed on Mr. Hill's arms at 7 Post by prison personnel at that location. Mr. Hill appeared to be intoxicated and under

the influence of some sort of drug. He was nervous, sweating, highly agitated, excitable, hyperactive, standing with an unusual stance, getting up and sitting down, threatening, verbally combative, abusive to the staff, talking very rapidly, and walking with an unusual gait. This activity of Mr. Hill was observed not only by Mr. Baca, Mr. Jackson, and the Physician's Assistant, Mr. Rodriguez, but later by Mr. Koon when he came to 7 Post after he was notified of the situation.

Mr. Koon was advised of the information Mr. Baca had gathered. He was well aware of the information which the prison officials possessed concerning Mr. Hill's previous drug activities at the prison and particularly the information known to the officials at the time of the March 8 search. Mr. Koon interrogated Mr. Hill regarding the red needle marks. He told Mr. Hill he had information that Mr. Hill had possession of dilaudids. Mr. Hill was given an opportunity to surrender any drugs in his possession.

Mr. Hill denied possession of any drugs. Thereupon Mr. Koon ordered Mr. Hill to provide a urine sample which he refused to do.

The Correctional Officers present then commenced to take Mr. Hill away to the "hole." As they started to leave Mr. Koon said to the officers "bring him back, I want a cavity search." Mr. Hill protested that he would not submit to such a search, but Mr. Koon said, "we're going to do it anyway." Mr. Hill was then escorted to the infirmary at 7 Post where over his protests a digital anal body cavity search was conducted by Physician's Assistant Rodriguez.

This digital body cavity search, like the March 8, 1987, searches, was done in a businesslike manner in a medical setting under hygienic conditions. The search took approximately five seconds. Numerous correctional officers, including Mr. Jackson, Mr. Baca and defendant Cartwright, another correctional officer, were present. The presence of the numerous officers at the search was necessitated for protection of the prison staff involved by Mr. Hill's threatening and combative statements and actions. While the recollections of various of those present at this search varies, the preponderance of the evidence is that Dr. Thomas Good, a physician under contract to the prison was also present and observed the search. Neither Mr. Koon nor Sgt. Benzler observed the April 9 search. No contraband was discovered as a result of this search.

The April 9 digital body cavity search was done upon orders of Mr. Koon. Mr. Rodriguez was told of Mr. Koon's order and that it was thought Mr. Hill had concealed drugs in his rectum.

Both the March 7 and April 9 digital body cavity searches were done in the same manner as the usual rectal examination which is conducted on most persons over the age of 40 undergoing a routine physical examination.

Both the Physician's Assistants who conducted the subject searches were employees of the Nevada Department of Prisons (N.D.O.P.) and were duly licensed, well trained, and experienced in conducting such searches and examinations. There is no indication whatever that had the searches been conducted by licensed physicians they would have been done in any other manner than which occurred.

There was considerable evidence presented at the trial pro and con as to whether the applicable Nevada Department of Prisons Administrative Regulations (the ARs) were complied with in conducting the digital body cavity searches. Failure to comply with the regulations is some evidence of whether the searches were constitutional, but failure of such compliance is not by itself a basis for relief.

Neither AR 422 nor 624 creates a liberty interest in itself. AR 422 applies to the custody personnel of the prison in making digital body cavity searches for contraband and AR 624 applies to conduct of medical personnel of the prison in conducting such searches.

In each case the decision and order for the search was made by Mr. Koon who qualifies in each instance under the regulations as Acting Warden or the designee of

the Warden. The order for each of the searches therefore came from the person in charge of the prison or the person designated by the Warden to make such a decision. The authorization for the searches was not in writing as required by AR 422. The searches did not comply with the requirement of AR 624 that any physical intrusion be by a physician. However, it is clear that the authorizations were by the proper authority and that the searches were performed by qualified, trained, and licensed medical personnel. No constitutional violation may be implied from the technical violations of the ARs which did occur.

■ The parties agree in the Pretrial Order at page 5, par. VI(1) that the test for conducting a digital body cavity search is whether "reasonable cause" exists for such a search. While defense counsel contended in closing argument at the trial that a lesser standard applied, i.e., reasonable suspicion, the Pretrial Order must govern the case.

The tests which the state regulations appear to establish are "reasonable cause" or "probable cause."

Whether a digital body cavity search is required to meet the test of reasonable cause to be constitutional, is a question. A significantly lesser standard such as, for example, "reasonable suspicion" conceivably might stand up to constitutional scrutiny as well. Cf. *Kennedy v. Los Angeles Police Dept.*, 887 F.2d 920 (9th Cir.1989) (involving visual body cavity searches of pretrial felony detainees), citing *Giles v. Ackerman*, 746 F.2d 614 (9th Cir.1984) (searches of pretrial misdemeanor detainees).

Mr. Koon and Mr. Whitley appeared in their dealings to have been using the test of "reasonable suspicion."

Since the parties have stipulated the correct test to be "reasonable cause," the Court will apply that test in determining the constitutionality of the particular searches in question. More specifically this question is whether there was reasonable cause to believe the plaintiff in question on that particular date had concealed drugs in his anal cavity. Reasonable cause must be taken to mean the same thing as probable cause, thus that the known facts and circumstances would lead a prudent person to believe that the individual in question was concealing drugs in his anal cavity.

Such searches must also meet the test of legitimate penological need, which is a somewhat different but in part overlapping test. A legitimate penological need for such a search must be balanced against the diminished but still existing rights of privacy of the inmate. The invasion of the rights of privacy should be considered in light of:

(a) the scope of intrusion;

(b) the manner in which the search is conducted;

(c) justification for initiating it; and

(d) the place in which it is conducted.

See *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979) (involving searches of convicted prison inmates); *see Vaughan v. Ricketts*, 859 F.2d 736, 741 (9th Cir.1988) (involving certain visual body cavity search requirements for inmates; *see also Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir.1988) (approving *visual* body cavity searches as routine for inmates entering or leaving a high security unit where such inmates had had the opportunity to obtain contraband while out of the unit; no showing of probable cause required at all).

■ In this case, the need to permit such searches with reasonable appropriate safeguards is obvious in a situation where smuggling of drugs into the prison was common. There was a legitimate penological need for such searches. The reasonable penological need for such searches viewed from the perspective of the particular searches according to the agreed standard established by the parties would then in turn depend upon whether there was reasonable cause to believe that the particular inmate on the particular occasion was secreting drugs in his anal cavity. Detection of drug trafficking and use in the prison provides a legitimate penological reason for

body cavity searches upon reasonable cause to believe that an inmate has concealed drugs in the rectal cavity.

As mentioned above, the Court must also consider the scope of the intrusion and the place where the search is done. The digital body cavity search is a sort of ultimate or last resort search which, you would think, ought to require reasonable cause or probable cause even in the circumstances of convicted inmates, such as these plaintiffs.

One of the principal concerns of the federal courts is the danger that such searches of inmates will be conducted for purposes of seeking to influence inmates to conform to prison regulations or as punishment without due process of law, rather than for valid penological goals of diminishing drug use and trafficking in the prison. See *Tribble v. Gardner*, 860 F.2d 321 (9th Cir. 1988).

There is also a separate secondary issue involved in this case of whether the searches were conducted in a reasonable manner and in a way so as not to constitute cruel and unusual punishment or to violate due process. In order to be conducted in a reasonable manner the search must not be wanton and no effort must be made to humiliate or degrade the inmate. The constitutionality of the conduct of such searches should be determined according to considerations of privacy, hygiene, training of those conducting the search and the place of the search.

■ If such digital body cavity search is conducted in a reasonable manner, it will not constitute cruel and unusual punishment. *Vaughan v. Ricketts, supra*, 859 F.2d at 741.

■ Here the searches were conducted in a reasonable manner, in private, with appropriate hygiene, by trained physician's assistants in an infirmary at the prison. During the conduct of the searches there was no effort to humiliate or degrade the inmate being searched. These body cavity searches did not constitute cruel and unusual punishment or a violation of due process, so far as the manner in which they were conducted.

■ In determining if the searches were made for valid penological reasons in the particular instances involved, we must also consider whether other available less intrusive, narrow and more restrictive means of search could have been employed. *Tribble v. Gardner, supra*, 860 F.2d at 325–26, *Leroy v. Mills* 788 F.2d 1437, 1439 (10th Cir.1986). If such less intrusive means could have been employed and were not, it may be implied that the particular search was not for a valid penological reason or on a basis of reasonable cause, but for other reasons such as coercing the inmates to behave themselves in general or as punishment. Such a search conducted without legitimate penological needs and reasonable cause is sufficiently dehumanizing and offensive, even if performed in a reasonable manner, so as to constitute an unreasonable search and a deprivation of a liberty interest and is therefore unconstitutional meriting relief under § 1983.

■ The March 8, 1987, searches were for the valid penological reason of the prevention of the introduction of drugs into the prison, and the trafficking of drugs within the prison. The prison officials received information that an effort would be made to smuggle drugs into the prison during visiting hours that day. Both plaintiffs had been under investigation for drug trafficking for a considerable period of time. Both had been caught prior to March 8, 1987, using drugs in the prison.

Mr. Hill had been disciplined at least twice for possession and use of drugs (including both cocaine and marijuana). He had refused to provide a sample for urinalysis on previous occasions, purporting to stand on his rights under the prison regulations, but it may be implied in view of his record in the prison more likely because he feared detection for use of controlled substances. Mr. Hill had also been suspected of possession of methamphetamine at the Northern Nevada Correctional Center when he was an inmate there.

As a result of a note or kite found in the prison Mr. Wilkins was believed to be a ringleader in drug trafficking in the prison.

Mr. Wilkins' medical records indicate he had been a narcotics addict. Mr. Wilkins had a reputation in the prison as a narcotics mule.

As mentioned above, prior to March 8, 1987, information had been received by the prison officials, including Mr. Koon, Mr. Baca and Mr. Jackson, that Vivian Haire (Mr. Hill's Mother) as well as Mr. Wilkins Mother, Rosalie Jones, were sources of drugs being introduced into the prison through the visiting room.

That there was real concern over drugs being smuggled into the prison on March 8 is evidenced by the heavy security in the visiting room at the prison that day and the precautions which Mr. Koon took through Sgt. Benzler. The evidence shows that this story was not made up. The prison officials, particularly Mr. Koon, were deeply concerned that drugs would be brought in to the prison that day through the visiting room and reasonably believed that plaintiffs were involved in such activities at the prison.

Mr. Jackson testified he had obtained information that Mr. Hill had been constantly in possession of drugs and had concealed them in his anal cavity.

When the sandwich baggie was found in the visiting room cesspool after the March 8 visitation, suspicion was heightened that drugs had been smuggled in through the visiting room that day. Mr. Koon had received the anonymous telephone call indicating plaintiffs might have concealed drugs in their rectums. The strip searches described above were conducted on both plaintiffs immediately after the visitation and disclosed no concealed contraband.

The preponderance of the evidence is that there was reasonable cause to believe plaintiffs had concealed drugs in their anal cavities on March 8, 1987. The searches were done for valid penological reasons in a reasonable manner and were not unconstitutional.

■ Prior to April 9, 1987, Mr. Baca had received information that the prison authorities should be on the lookout for suspicious activity in F Wing where Mr. Hill was housed. Mr. Baca knew of the past drug conduct of Mr. Hill at the prison in both marijuana and cocaine. He had received information that Mr. Hill had received dilaudids, but that they hadn't been distributed. Mr. Koon had received similar information two days before April 8. At that time Mr. Baca was the Security Squad supervisor and he alerted the guards in F Wing to be on the lookout for suspicious activity. The principal attention seems, however, to have been focused on inmate Layton rather than Mr. Hill. In due time on April 9, 1987, Mr. Baca was advised of what he described as a large amount of activity in F Wing. He and another officer proceeded immediately to F Wing where they made the observations of Mr. Hill which are mentioned above. After Mr. Koon was called to 7 Post, was advised of the information Mr. Baca had garnered and had examined Mr. Hill's needle marks, he confronted Mr. Hill. Mr. Hill refused the urinalysis. The credible evidence is that Mr. Hill appeared to be intoxicated and under the influence of a controlled substance. Then, as mentioned above, Mr. Koon ordered the digital anal body cavity search be conducted.

The preponderance of the evidence is that prior to the digital anal cavity search on April 9, 1987, Mr. Hill's cell was not searched; Mr. Hill's mouth, hair and clothing were not searched. There was no strip search of Mr. Hill prior to the digital anal body cavity search. Mr. Koon testified that prior to ordering the digital search he had requested a strip search of Mr. Hill and assumed such had been done. However, there is no other testimony or evidence to support this claim. None of the other prison officials present at the time testified to such a request or that a strip search was conducted. It is particularly noteworthy that Mr. Baca who was the principal investigator of the April 9 incident and present throughout the entire occurrence did not testify as to any such request for strip search or that a strip search occurred.

At the time of the April 9 digital body cavity search of Mr. Hill, inmate William Berry overheard Mr. Koon and Sgt. Benz-

ler discussing digital body cavity searches being done that day to show that they were not fearful of lawsuits which had been filed in regard to previous body cavity searches. Prior to the March 8 searches Mr. Koon had commented that he welcomed a lawsuit to determine if he was acting lawfully in conducting such searches.

Testimony by both Mr. Baca and Mr. Koon that Mr. Wilkins told them on different occasions that Mr. Hill would have narcotics in the prison on March 8, 1987, or that on April 9, 1987, Mr. Hill had secreted narcotics in his anal cavity is largely incredible. There is no corroboration for this claim and the evidence in the case points to the contrary as the truth.

There is some suggestion in defendants' case that Mr. Hill might have acquired drugs through some visitation sometime just prior to April 9, 1987, but no evidence of any such visitation was presented at trial. There was very little to indicate that Mr. Hill was concealing drugs in his anal cavity on that day. It was quite clear he had received and had been using drugs, but that alone would not justify the digital search.

The Court finds that the preponderance of the evidence is that the digital anal body cavity search of Mr. Hill on April 9, 1987, was not done for a legitimate penological reason or on a basis of reasonable cause.

It may, however, be concluded that Mr. Hill suffered no physical injury as a result of the unconstitutional digital body cavity search on April 9, 1987. The search did not result in Mr. Hill contracting hemorrhoids. Hemorrhoids are not caused by such a search. While bleeding of existing hemorrhoids could be caused by such a search, if they are inflamed at the time of the search, there is no evidence here that Mr. Hill's hemorrhoids were inflamed at that time or that this search resulted in any injury to his hemorrhoids.

Although Mr. Hill has apparently had hemorrhoids for a considerable period of time, nothing the Physician's Assistant, Mr. Rodriguez, did on April 9 caused any injury to Mr. Hill's hemorrhoids. No trauma or bleeding was observed after the April 9 search was concluded.

A digital anal body cavity search, while not painful in these circumstances, is humiliating, degrading, and uncomfortable. More narrow and restrictive means which could have been used to search Mr. Hill were not used. *Tribble v. Gardner*, 860 F.2d 321, 325–26 (9th Cir.1988).

Mr. Koon acted with gross negligence or deliberate indifference to Mr. Hill's constitutional right not to be subjected to the unreasonable (in the circumstances) digital anal body cavity search and the violation of his due process rights which occurred at that time.

Mr. Koon is not entitled to qualified immunity on account of his conduct. Plaintiff Hill had the clear right at the time of the digital body cavity search on April 9, 1987, not to be subjected to a digital body cavity search where there was no legitimate penological need for the search under the circumstances.

Mr. Hill suffered actual injury as a result of Mr. Koon's conduct and is entitled to general damages in the amount of $1,000 on account of the conduct of Mr. Koon on April 9, 1987. Further, Mr. Koon's conduct constituted reckless or callous disregard for the federally protected rights of Mr. Hill and Mr. Hill is therefore entitled to an award of punitive damages in the amount of $3,000 from Mr. Koon.

There is no basis for any finding of liability or award of damages against the other remaining defendants. The defendants Sgt. Benzler and Mr. Dredge were previously dismissed by the Court at the end of plaintiffs' cases in chief pursuant to Fed.R. Civ.P. 41(b) because there was no evidence of any liability of either of them. Mr. Dredge was charged only in connection with the April 9 incident.

The Court previously dismissed defendant Warden Whitley in respect to the March 8 incident but declined to render judgment relative to Warden Whitley's activities in regard to the April 9 incident because of a then unexplained telephone call by Mr. Koon to Mr. Whitley in regard to that occurrence. The evidence is that

Mr. Whitley told Mr. Koon in that telephone call to proceed with a digital body cavity search if he had reasonable suspicion. All this instruction of Warden Whitley appears to do is to cede to Mr. Koon the power to make the decision and in essence made Mr. Koon the Warden's designee to decide the matter. There is no showing that Mr. Whitley participated in the deprivation of Mr. Hill's rights on April 9. The action must be dismissed as to Mr. Whitley. There is no credible evidence that he knew of the circumstances or participated in the decision to make the digital body cavity search. Mr. Hill's testimony to the contrary is incredible.

■ The Physician's Assistants Mr. Butler and Mr. Rodriguez acted properly in the circumstances on both March 8 and April 9. They acted pursuant to orders of the Warden or his designee. All the circumstances known to them indicated it was appropriate for them to proceed with the searches. They could not verify the underlying information for themselves and had no duty to do so. They had checked with Dr. Browning, their boss, the medical director of the prison, and he instructed them that it was proper for them to proceed with such a search. They were instructed by the properly appointed and designated prison personnel to go ahead and were advised that such personnel believed Mr. Hill and Mr. Wilkins had secreted drugs in their anal cavities. Neither Mr. Butler nor Mr. Rodriguez acted with gross negligence or deliberate indifference toward plaintiffs and neither are liable.

Mr. Baca and Mr. Jackson likewise are not liable. Neither of them acted with gross negligence or deliberate indifference to the rights of plaintiffs. They provided information to Mr. Koon which reasonably appeared to them to be accurate and which they had no reason to distrust. The decision maker was Mr. Koon. Mr. Baca and Mr. Jackson followed Mr. Koon's orders that the searches be conducted. Mr. Jackson was present and enforced Mr. Koon's orders at both the March 8 and April 9 searches. Mr. Baca was present only in connection with the April 9 search and aided in carrying out Mr. Koon's orders at that time. Both plaintiffs previously, with the Court's approval, dismissed Mr. Baca in connection with the March 8 incident.

Neither Mr. Baca nor Mr. Jackson was in a position or had the authority to make the decision that the digital body cavity searches be conducted. That decision was Mr. Koon's and Mr. Koon's alone. He was the key player. There was nothing to indicate to Mr. Baca or Mr. Jackson that Mr. Koon's actions were improper or unlawful. They were not privy to all of the information Mr. Koon possessed or the basis for his decision. They did not advise Mr. Koon as to what decision he should make. They knew the decision was Mr. Koon's to make.

The Court previously declined to render judgment on the Fed.R.Civ.P. 41(b) motions as to defendant Cartwright until close of all the evidence. Mr. Cartwright was charged only with respect to the April 9 search. The Court now concludes that the only participation of Mr. Cartwright was to assist the other officers at the April 9 search. He had no reason to believe he was not acting properly. He had no part in making the search decision. For the same reasons that Mr. Baca and Mr. Jackson are not liable, Mr. Cartwright is not liable.

Possible claims regarding the X–Ray search of Mr. Wilkins on March 8, 1987, appear to have gone by the wayside. The X–Ray examination did constitute a search. There was no effort, however, by plaintiff Wilkins to make any showing that this search was conducted in an unreasonable manner or that he suffered any damages by reason of the X–Ray. The X–Ray search was not humiliating or degrading and in these circumstances did not cause any injury to plaintiff Wilkins. There was probable cause for the X–Ray search. No judgment should be entered on account of the X–Ray of plaintiff Wilkins.

No basis for granting an injunction is shown. There is no showing that the conduct of defendant Koon will be repeated, or that he has exhibited a course of conduct which indicates he would act unlawfully again.

The foregoing shall constitute findings of fact and conclusions of law.

The Clerk shall therefore enter judgment as follows:

1. In favor of plaintiff Hill and against defendant Koon in the sum of $1,000 for general damages and $3,000 for punitive damages.

2. In favor of defendants Jackson, Whitley, Benzler, Baca, Butler, Cartwright, Dredge, and Rodriguez and against plaintiffs.

3. In favor of defendant Koon and against plaintiff Wilkins.

4. In favor of defendants and against plaintiffs on their claim for injunction.