Steven A. RINKER,
Plaintiff-Appellee-Cross-Appellant,

v.

COUNTY OF NAPA; City of Napa; City of Calistoga; City of St. Helena, and Randall Fitt, Defendants-Appellants-Cross-Appellees.

Nos. 85–1868, 85–1920, 85–2789 and 85–2813.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 1987.

Decided Oct. 22, 1987.

Stuart R. Mandel, Beverly Hills, Cal., for plaintiff-appellee-cross-appellant.

Donald T. Ramsey, San Francisco, Cal., for defendants-appellants-cross-appellees.

Before ANDERSON, ALARCON and HALL, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

This case arose out of a shooting which occurred on March 14, 1980, in which officer Randall Fitt of the Napa Special Investigations Bureau shot Steven Rinker in the face during a drug raid. A jury found appellants liable for battery and negligence and for violating 42 U.S.C. § 1983. Appellants moved for judgment notwithstanding the verdict ("JNOV") on the § 1983 violation. The district court denied the motion. We reverse.

**FACTS**

After an investigation of Kim Dixon, who rented a home in Napa, California, Officer Fitt, his partner and his supervisor formulated a "buy-bust" plan to apprehend a major cocaine supplier. At least two alternative plans were formulated. Due to certain circumstances, the plan which involved a raid of the house was implemented. There were eight people in the house the night of the raid: Kim Dixon, an NSIB agent buying cocaine, Dixon's two-year old daughter, Chris Wohlers, Steven Rinker and three visitors that evening—Fielder, the cocaine dealer, and two seventeen-year old girls. After the code word had been

given, the police prepared to enter the house. At the front door, Fitt knocked loudly, yelled "Police!" and announced the narcotics raid.[1] The two teenage girls testified that the knock and announcement were loud enough to be heard in the back bedroom where they and Rinker were laying out lines of "speed" (methamphetamine) on a mirror to snort. After waiting for a response, Fitt opened the front door and immediately apprehended Ms. Wohlers. As Fitt moved down the hallway, he saw the NSIB agent through an opened bedroom door. After knocking and identifying himself, Fitt entered the room and arrested Dixon. As he was about to hand Dixon over to the NSIB agent, Fitt heard sounds of movement from inside a bedroom several feet away. Not knowing that Fielder, the cocaine supplier, had already been arrested by another officer, Fitt held a struggling Dixon behind him with his left arm and proceeded down the hallway with his gun in his right hand. When he reached the bedroom door, he yelled "police!" while simultaneously opening the door.

Shortly after Fitt entered the bedroom, he shot Rinker. The parties dispute the facts surrounding this shooting. According to appellants, after he opened the door, Fitt was at first relieved to see Rinker in the room, since, due to previous encounters, Fitt knew Rinker was not the cocaine supplier they were seeking. With his gun still drawn, Fitt said "Hi." As he did, a strange look spread across Rinker's face and Rinker "suddenly exploded in motion, jumping toward Fitt with something clenched in his right fist." Although his exit was blocked by Dixon, Fitt began to say "Don't" and tried to jump back. Fitt testified that in that same instant, he "knew" Rinker had something in his hand. Fitt admitted that he was not sure whether it was the flash of the mirror, the movement of the razor blade used to cut the speed, or the plastic bag of speed that gave him such a distinct impression that Rinker was armed. Fitt testified that he saw what he believed to be a weapon, that he feared

for his life, and as a consequence, he fired his weapon. Rinker, on the other hand, claims that he was merely startled by the door opening and rose quickly to his knees. At this point, Fitt shot him.

After the shot was fired, Fitt bent down and grabbed Rinker's hands to locate the weapon he thought Rinker had. When another officer entered the room, Fitt warned him to watch out because Rinker was armed. No weapon was found on Rinker; instead, Fitt found a plastic bag containing speed in Rinker's right hand.

Rinker filed suit against appellants, alleging intentional, reckless and negligent conduct. Liability was asserted under 42 U.S.C. § 1983 and state tort law. At the first trial, the jury found for Rinker and awarded damages of $565,000.00. The district court reduced this amount to $305,000.00. On appeal, the Ninth Circuit reversed and remanded for a new trial based on a determination that Rinker's attempt to influence a juror after final instructions prejudicially tainted the jury's deliberations. *Rinker v. County of Napa*, 724 F.2d 1352 (9th Cir.1983).

The second trial resulted in a special verdict which assessed damages of $364,500.00 and found Fitt liable for battery, negligence, and a § 1983 violation. The jury also found Rinker 25% at fault and determined that the governmental defendants were not negligent in supervising or disciplining its police officers. The jury also found that Fitt did not act maliciously, wantonly or oppressively, and did not award punitive damages.

Appellants moved for JNOV, arguing that the finding of a § 1983 violation was not supported by the evidence and inconsistent with the other jury findings. The district court denied the motion and appellants timely appeal from that denial, as well as from the court's denial of certain jury instructions. Rinker cross-appeals from the jury's finding that he was 25% at

---

1. The district court held, in its grant of summary judgment on the issue, that there were no

Fourth Amendment violations when the police entered the house.

fault, as well as from certain evidentiary rulings.[2]

After the judgment was entered, Rinker filed for attorney's fees under 42 U.S.C. § 1988 (1982). The district court denied attorney's fees for the first trial, granted them for the second trial, and awarded a total of $209,675.40 in attorney's fees. Costs were awarded in the amount of $48,-831.85. Interest in the amount of 9.08% was awarded and to be calculated from the date judgment was entered in the second trial. Appellants appeal from the fee award, arguing that if the court finds there was no § 1983 violation, then no basis exists for a § 1988 fee award. Rinker cross-appeals from the fee award, arguing that fees should have been awarded for the first trial and that interest should run from the date of the first judgment.

## STANDARD OF REVIEW

1. In their motion for JNOV, appellants argued that, among other things, insufficient evidence supported the finding of a § 1983 violation. The propriety of a JNOV is reviewed under the same standard as applied by the district court. A JNOV is proper when the evidence permits only one reasonable conclusion as to the verdict. *Peterson v. Kennedy*, 771 F.2d 1244, 1252 (9th Cir.1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). In reviewing the motion, the court is not permitted to account for witness credibility, weigh evidence, or reach a different result it finds more reasonable, as long as, viewing the evidence in the light most favorable to the nonmoving party, the jury's verdict is supported by substantial evidence. *Los Angeles Memorial Coliseum Com'n v. N.F.L.*, 726 F.2d 1381, 1392 (9th Cir.), *cert. denied*, 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984).

## DISCUSSION

*1. Section 1983*

■ To sustain an action under § 1983, the claimant must show: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) this conduct deprived the claimant of a

constitutional right. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). Rinker alleged that appellants violated his substantive due process rights when Fitt entered Rinker's bedroom and "without cause and unjustifiably" shot him in the face. Although Fitt's conduct was committed under color of state law, it is unclear whether that conduct did not deprive Rinker of any constitutional rights.

The nature of a substantive due process claim in the police abuse context was given broad outline in *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), in which the Supreme Court held inadmissible incriminating evidence which had been obtained by subjecting the suspect to a stomach pump. As the Court explained, substantive due process is violated when the government engages in actions which "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." *Id.* at 169, 72 S.Ct. at 208. The Court did not articulate specific standards for identifying substantive due process violations but concluded that they lie where state conduct "shocks the conscience" or constitutes force that is "brutal" and offends "even hardened sensibilities." *Id.* at 172–73, 72 S.Ct. at 209–10. Since *Rochin*, however, the circuit courts have developed more definite standards for identifying substantive due process violations. As noted in the leading case of *Johnson v. Glick*, 481 F.2d 1028 (2nd Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), the violations which give rise to a substantive due process claim are necessarily more egregious than those which give rise to simple tort actions. In Judge Friendly's words,

[I]n determining whether the constitutional line has been crossed, a court must look to such factors as the need for application of force, the relationship between the need and the amount of force that

---

**2.** The appellants do not challenge the jury's negligence verdict. In fact, they have paid $315,-226.91 in partial satisfaction of the judgment below. This amount reflects the amount of the verdict plus costs and interest, reduced by Rinker's 25% fault.

was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *Id.* at 1033.

We first adopted the *Johnson v. Glick* analysis in *Meredith v. State of Arizona,* 523 F.2d 481, 484 (9th Cir.1975), holding that an unprovoked assault and battery by a guard upon a state prisoner was a violation of the prisoner's constitutional right to due process. In *Meredith,* we stated that under *Johnson v. Glick,* conduct under color of state law that can be fairly characterized as "intentional, unjustified, brutal, and offensive to human dignity" violates the victim's right to substantive due process. *Id.* That analysis was recently reaffirmed in *Rutherford v. City of Berkeley,* 780 F.2d 1444, 1446 (9th Cir.1986), holding that an allegation of an unprovoked assault and battery on an individual by the police officers placing him in custody, by throwing the individual to the ground and repeatedly punching and kicking him, satisfied the *Meredith* criteria.

The two recent Supreme Court cases of *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), have not changed this. *Daniels* and *Davidson* held that the due process clause is not implicated by the negligent act of an official causing loss to life, liberty or property. *Daniels,* 474 U.S. at 328, 106 S.Ct. at 663, 88 L.Ed.2d at 666; *Davidson,* 474 U.S. at 347, 106 S.Ct. at 670, 88 L.Ed.2d at 682. This is so whether the due process claim is procedural or, as in this case, substantive. *See Davidson,* 474 U.S. at 348, 106 S.Ct. at 671, 88 L.Ed.2d at 683 ("the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care.").

Here, it is unclear whether Fitt acted intentionally [3] or negligently in shooting Rinker. It may be that the shooting resulted from a spontaneous, negligent reaction. However, it could also be that Fitt fully contemplated shooting Rinker before Fitt ever entered the house. This is seen in the evidence showing that an hour before the drug raid, Officer Fitt commented that he "was going to blow someone away."

The jury was instructed that a lack of due care was sufficient to create liability under § 1983. This is contrary to both *Daniels* and *Davidson.* Since the jury was erroneously instructed, and the instructions given were clearly prejudicial to the appellants, we must reverse the district court's failure to grant their JNOV motion.[4] In light of the conflicting evidence presented we will not speculate on how the jury would have resolved the claims had it been properly instructed. We therefore remand resolution of the § 1983 claim for a new trial. *See Malat v. Riddell,* 383 U.S. 569, 571, 86 S.Ct. 1030, 1032, 16 L.Ed.2d 102 (1966).

### 2. *Section 1988*

42 U.S.C. § 1988 was the basis upon which the district court granted attorney's fees. However, in order to be awarded fees under § 1988, a constitutional violation under § 1983 must be shown. Because we reverse the JNOV motion on the § 1983 action, it follows that the award of attorney's fees under § 1988 must also be reversed.

### CONCLUSION

The district erred in denying the JNOV motion as to the § 1983 verdict. Since the jury was improperly instructed on this claim, we reverse the JNOV and remand to resolve the § 1983 issue on retrial. For

---

**3.** *Daniels* specifically left open the question of whether recklessness or gross negligence would give rise to a due process clause violation. *Daniels v. Williams,* 474 U.S. at 334, 106 S.Ct. at 667, 88 L.Ed.2d at 670 n. 3.

**4.** We note that the district court did not have the benefit of either *Daniels* or *Davidson* when it instructed the jury in this case.

these same reasons, the attorney's fee award must also be reversed.[5]

REVERSED and REMANDED.

---

**5.** Although we do not discuss Rinker's arguments on his cross-appeal, we have considered them and find them to be without merit.