**Terrence L. WETMORE, Plaintiff,**

v.

**Booth GARDNER, et al., Defendants.**

**No. C–86–168–JLQ.**

United States District Court,
E.D. Washington.

April 6, 1990.

Terrence L. Wetmore, Walla Walla, Wash., pro se.

Leo J. Driscoll, Winston & Cashatt, Spokane, Wash., for plaintiff.

John Scott Blonien, Linda A. Dalton, Pat L. De Marco, Glenn L. Harvey, Asst. Attys. Gen., Olympia, Wash., for defendants.

QUACKENBUSH, District Judge.

Before the Court is the defendants' Motion for Judgment Notwithstanding the Verdict or in the Alternative Motion for New Trial (Ct.Rec. 63), heard with oral argument on December 26, 1989. John Scott Blonien appeared on behalf of the defendants. Leo J. Driscoll entered an appearance on behalf of the plaintiff. Having reviewed the record, heard from counsel, and being fully advised in this matter, IT IS HEREBY ORDERED that the defendants' motion is DENIED.

## BACKGROUND

This case is one of more than 100 filed in this district by prisoners at the Washington State Penitentiary who were subjected to digital rectal cavity probe searches. The general background of these cases is set forth in *Tribble v. Gardner*, 860 F.2d 321 (9th Cir.1988). However, some additional factual information was presented during the trial of this and other cases.

In 1984, the State of Washington completed construction of an Intensive Management Unit ("IMU") at the Washington State Penitentiary ("WSP") at Walla Walla, Washington. The IMU contains some 96 single-bed cells. Prisoners are housed at the IMU for a number of reasons, including the protection of the inmate(s) himself.

Prior to the opening of the IMU, the defendants instituted a Department of Corrections regulation, *see* WAC 137–32–005, which gave the Superintendent (Warden) complete discretion to order a prisoner transferred to the IMU if, in the judgment of the Superintendent, the presence of an inmate in general population would constitute a serious threat to the inmate himself, another inmate, or "the orderly operation of the institution."

In 1984, the defendants also instituted the policy at issue in these cases, that being that every inmate transferred to the IMU would be subjected to an involuntary digital rectal cavity probe search, without any showing of any suspicion or cause to believe that the inmate might be smuggling any contraband whatsoever. Once it was determined that a prisoner was to be taken to the IMU, the search and escort squad, composed of at least five prison guards, was assembled for the purpose of chaining the prisoner, taking him to the digital rectal probe area of the main institution and requiring him to submit to an involuntary search of his anal cavity by a nurse or physician's assistant.

In each instance, the search and escort squad, prior to taking the prisoner to the area of the digital rectal probe, required him to discard his regular denim prison garb and dress in orange coveralls. They then secured him in leg irons, placed another chain around the prisoner's waist, and cuffed his hands behind him. Testimony in the great majority of these cases, including this one, was that the prisoners were taunted by the search and escort officers with such statements as: "Today, you meet Mr. Big Finger...." The large number of guards assigned to transport each chained prisoner to the rectal probe is evidence of the distaste the prisoners held for this procedure, but also gives some credence to the claims of taunts.

The escorted prisoner was taken by the search and escort squad through the general population areas to an examining room, where the digital probe was performed. When the prisoner was dressed in orange coveralls, it was obvious to everyone that he was being escorted for the purpose of having a digital rectal probe conducted. After the prisoner arrived at the examining room, the orange coveralls were forcibly pulled down to his knees and the prisoner, while still chained, was forced to lie on or across an examining table with his anus exposed. A nurse or physician's assistant then came into the room, placed a rubber examining glove on his hand, and proceeded to probe the prisoner's anal cavity in search of alleged contraband.

As indicated, this digital rectal probe of the prisoner's anal cavity took place while the prisoner was still chained, and in the presence of the entire search and escort squad. At times, a member of this squad would video-tape the digital rectal probe search. The evidence indicated that even

though hundreds of such searches were performed, no contraband was ever found in any of the prisoners' anal cavities.

Terrence L. Wetmore, an inmate incarcerated at the WSP, brought this civil rights action alleging that he was deprived of his fourth and eighth amendment rights when he was subjected to a digital rectal probe search on January 17, 1986, prior to his placement in the prison's IMU.

On October 30, 1989, after a jury trial in which Mr. Wetmore appeared pro se, the jury returned a verdict for the plaintiff and against four of the five defendants, awarding the plaintiff nominal damages of $1.00. The four defendants found to be liable were administrative personnel who were instrumental in the implementation of the digital probe search policy. The fifth defendant, Robert Zabor, the registered nurse who performed the search on the plaintiff, received a verdict in his favor.

The defendants now move for judgment notwithstanding the verdict or, in the alternative, for a new trial. The focal point of their attack is on certain jury instructions that either were given over the defendants' objection or were requested by the defendants and ultimately rejected. Defendants maintain that the effect of the challenged instructions was to shift the burden away from the plaintiff and, thus, force them to prove that their conduct did not violate the plaintiff's constitutional rights. The defendants also challenge various evidentiary rulings.

### Discussion

The defendants base their motion on Rules 50(b) [1] and 59 [2] of the Federal Rules of Civil Procedure. The two rules serve distinct functions and are governed by different standards. "The function of the directed verdict and the judgment n.o.v. is to order a final verdict for the moving party, whereas the function of the new trial is to order a redetermination of the issues before a new jury." *Urti v. Transport Commercial Corp.*, 479 F.2d 766, 768 (5th Cir. 1973).

The authority to grant a new trial is "confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d 193 (1980). This discretionary power is useful in correcting prejudicial errors at trial and, under certain circumstances, may be used to remedy the harsh consequences of erroneous evidentiary rulings, *see Chalmers v. City of Los Angeles*, 762 F.2d 753, 761 (9th Cir.1985); *Alma v. Manufacturers Hanover Trust Co.*, 684 F.2d 622, 625 (9th Cir.1982), improper jury instructions; *see Rinker v. County of Napa*, 831 F.2d 829, 832 (9th Cir.1987); and verdicts that are against the clear weight of the evidence, *see Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir.1987).

In contrast, the trial court's discretion when ruling on a motion for judgment notwithstanding the verdict is quite limited. "JNOV is appropriate only when the evidence, viewed in the light most favorable to the non-moving party, could not reasonably support the verdict." *Dean v. Trans World Airlines, Inc.*, 893 F.2d 1123, 1226 (9th Cir.1990). In reviewing the motion, the court is not permitted to weigh the evidence or the credibility of the witnesses,

---

1. Fed.R.Civ.P. 50(b) provides in part:

   "**(b) Motion for Judgment Notwithstanding the Verdict.** Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict.... A motion for a new trial

   may be joined with this motion, or a new trial may be prayed for in the alternative...."

2. Fed.R.Civ.P. 59 provides as follows:

   "**(a) Grounds.** A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....

   "**(b) Time for Motion.** A motion for a new trial shall be served not later than 10 days after the entry of judgment."

and may not reach a contrary result simply because it is thought to be more reasonable. *Rinker*, 831 F.2d at 831.

### A. Burden of Proof

■ The defendants assign error to the court's Instruction No. 7. That instruction states:

> You are instructed that on January 17, 1986, the date of the digital rectal probe performed on Mr. Wetmore, the law was clearly established that a prisoner could not be subjected to a digital rectal probe unless it was based upon a legitimate penological purpose.
>
> You are instructed that the plaintiff is entitled to recover from the defendants unless the defendants establish by a preponderance of the evidence their affirmative defense that the digital rectal probe of Mr. Wetmore was performed for a legitimate penological purpose, that being the prevention of the smuggling of contraband into the I.M.U. building. The burden is upon the defendant(s) to establish this affirmative defense by a preponderance of the evidence.

Ct.Rec. 52, No. 7. The defendants' concerns are two-fold. First, they maintain that the instruction impermissibly shifts the burden of proof to the defendants without any initial showing on the plaintiff's part that he was deprived a right of constitutional magnitude. Secondly, they contend that the instruction is formulated in such a way that the jury must apply a heightened standard of scrutiny—something more substantial than a "reasonable relationship" test. The court disagrees.

In *Tribble v. Gardner*, 860 F.2d 321 (9th Cir.1988), the Ninth Circuit recognized that if the digital rectal probes were conducted for purposes unrelated to security considerations, such procedures would violate the fourth amendment as a matter of law. *Id.* at 325 n. 6. The court acknowledged that the rectal probes burden fundamental rights. The *Tribble* court stated: "As noted above, when a prison regulation burdens fundamental rights *the government must* show that the regulation is reasonably re-

lated to a legitimate penological goal." *Id.* (emphasis supplied).

The defendants correctly note that prison administrators are accorded wide-ranging deference in the adoption and execution of policies that are thought necessary to preserve institutional order. *See Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). Equally as correct, however, is the principle that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Id.* at 545, 99 S.Ct. at 1877; *see Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir.1988). Inmates retain all constitutional rights that are not inconsistent with their status as prisoners or " 'with the legitimate penological objectives of the corrections system.' " *Turner v. Safley*, 482 U.S. 78, 95, 107 S.Ct. 2254, 2265, 96 L.Ed.2d 64 (1986) (quoting *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974)). Thus, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* 482 U.S. at 89, 107 S.Ct. at 2265. This suggests an initial inquiry, even before reaching the "reasonably related" issue, whether the particular conduct would impinge on an inmate's constitutional rights if it were wholly unrelated to a legitimate penological interest. If that question is answered in the affirmative, then the subsequent showing of reasonableness must be made to save the policy.

In the present case, the regulation at issue is a blanket requirement that all prisoners transferred to IMU be rectally probed, without any cause predicate. In considering this very policy, the Ninth Circuit has held that the digital rectal probe procedure, if performed without probable cause and for purposes unrelated to security considerations, would violate the inmate's fourth and eighth amendment rights. *Tribble*, 860 F.2d at 325 & n. 6; *see United States v. Lilly*, 576 F.2d 1240, 1246 (5th Cir.1978); *Sostre v. Preiser*, 519 F.2d 763, 764 (2nd Cir.1975). The reasons are quite obvious; such searches are highly intrusive and humiliating. The Supreme

Court in *Bell*, when considering a *visual* body-cavity search, stated: "Admittedly, this practice instinctively gives us the most pause." *Bell*, 441 U.S. at 558, 99 S.Ct. at 1884; *see also Kennedy v. Los Angeles Police Dept.*, 887 F.2d 920, 928–28 (9th Cir.1989) ("The intrusiveness of a body-cavity search cannot be overstated. Strip searches involving the visual exploration of body cavities are dehumanizing and humiliating."). Here, we have more than a visual search of body cavity areas. The search in this case involved the probing of the anal cavity, without any cause to believe or even suspect the secreting of contraband. This invasive procedure took place while Mr. Wetmore was chained at the legs, waist, and hands, and while the members of the "escort" squad were present and observing.

The law is clear that, absent justification, a digital rectal probe deprives an inmate of his constitutional rights. The only real inquiry in this case, therefore, was whether the policy could be saved from constitutional infirmity by reason of legitimate penological objectives. The collateral question, one which is dispositive for purposes of the present motion, is which side of the courtroom has the burden of persuasion on the issue of justification. The court finds that Instruction No. 7 properly placed the burden on the defendants to justify the existence of the digital probe policy and the anal cavity searches performed pursuant to that policy.

The *Tribble* court stated that it is the government's burden to show that the regulation and search was reasonably related to a legitimate penological need. *Tribble*, 860 F.2d at 324, 325 n. 6. Stating that were it faced with the issue of the constitutionality of anal searches it would have reached the same result, the Ninth Circuit cited the Fifth Circuit's decision in *United States v. Lilly*, 576 F.2d 1240 (5th Cir. 1978). Similarly, this court finds the *Lilly* decision to be, in most respects, sound and persuasive.

At issue in *Lilly* was whether the government should bear the burden of es-

tablishing the reasonableness of a digital rectal probe search. The court first noted that, historically, "whenever the government has invaded an individual's privacy, the government has been required to justify its invasion by proving that it was reasonable under all the facts and circumstances." *Lilly*, 576 F.2d at 1245. Indeed, in analogous, noninstitutional situations in which neither a warrant nor probable cause are necessary to conduct a search and seizure, the government must justify its conduct. *See e.g., United States v. George*, 883 F.2d 1407, 1411 (9th Cir.1989) (showing of exigent circumstances to excuse lack of search warrant); *United States v. Delgadillo–Velasquez*, 856 F.2d 1292, 1295 (9th Cir.1988) (same). This shift in the burden not only serves to place a check on the actions of governmental agents, *Lilly*, 576 F.2d at 1245, but also has practical underpinnings—the "prison administration is in a better position to prove reasonableness than a prisoner is in to prove unreasonableness." *Id.* (citing *Cohen v. Norris*, 300 F.2d 24, 32 (9th Cir.1962)). Taking all of these factors into consideration, and finding no reason to make an exception when such searches are carried out in the prison context, the *Lilly* court ultimately held that "the government necessarily must carry this burden [of showing the reasonableness of the digital probe searches]." *Id.*

This court finds that Instruction No. 7 properly instructed the jury on the relevant law as stated in *Tribble* and *Lilly*. The defendants admitted that the digital probe of Mr. Wetmore was not based upon any belief or suspicion that he was secreting contraband in his rectal cavity. Absent a showing of a legitimate penological justification, the digital rectal probe search of Mr. Wetmore was clearly unconstitutional. The burden of establishing a legitimate penological justification was properly placed on the defendants. Thus, the court finds nothing erroneous in the instruction which directed a finding for the plaintiff unless the defendants established a legitimate penological purpose for the search.[3]

3. Mr. Wetmore represented himself in the trial of this matter. The defendants themselves testi-

■ Finally, the defendants contend that the wording of Instruction No. 7 requires that they show more than a mere "rational relationship" between the policy and a legitimate penological objective. Apparently, the defendants would require that the court use the term "reasonable relationship" and no other.

The court is satisfied that Instruction No. 7 correctly and adequately stated the pertinent law and did not mislead the jury, as suggested by the defendants. As written, the instruction informed the jury that the policy must be "based upon" a legitimate penological purpose. The court finds nothing fundamentally different between this statement and saying that the policy must be "reasonably related" to a valid need. Indeed, it could be argued that the term "based upon" is in reality an easier standard to meet because it suggests that any relationship at all is sufficient. At the very least, the court cannot say that the failure to use the term "reasonably related" constitutes error warranting a new trial. *See Benigni v. City of Hemet*, 853 F.2d 1519, 1524 (9th Cir.1988) ("[E]rror in instructing the jury in a civil case does not require reversal if it is more probably than not harmless."). Accordingly, the defendants' motion for judgment notwithstanding the verdict or, in the alternative, a new trial based on Instruction No. 7, is HEREBY DENIED.

## B. Sufficiency of the Evidence

■ The defendants contend that the plaintiff did not present sufficient evidence to satisfy his initial burden of establishing the deprivation of a right of constitutional magnitude. The discussion above, however, is dispositive of that issue. The extreme intrusiveness of the digital rectal probe procedure renders it suspect; the fact that it occurred without any probable cause whatsoever is sufficient to shift the burden to the defendants to establish reasonableness. *Tribble* supports this ruling. The defendants admitted that the anal probe did occur and that the plaintiff was

in restraints at the time. More importantly, however, the defendants conceded that, at the time of the probe search, there was no probable cause or belief that the plaintiff was secreting contraband.

In light of the testimony and admissions, the court finds that the plaintiff's evidence was more than adequate to make out a prima facie case that his constitutional rights were violated, thus shifting the burden to the defendants to show that the search was performed in furtherance of a legitimate penological need. Absent such a showing, it is clear that the plaintiff was denied his fourth and eighth amendment rights. *See Tribble*, 860 F.2d at 325 n. 6. Accordingly, the defendant's motion for judgment notwithstanding the verdict or, in the alternative, a new trial based on insufficient evidence, is HEREBY DENIED.

## C. Alternative Means

■ Prior to trial, the defendants submitted a proposed jury instruction that read as follows: "Prison administrators need not choose the least restrictive or intrusive means to accomplish a legitimate penological goal. This is but one factor to be considered." Ct.Rec. 46, No. 41 (citing *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1986)). They contend that the court's failure to give this instruction amounted to prejudicial error that mandates judgment notwithstanding the verdict or a new trial. The court disagrees.

The general rule is that "[j]ury instructions, viewed as a whole, should adequately instruct a jury on each element of a case." *Ragsdell v. Southern Pacific Transp. Co.*, 688 F.2d 1281, 1282 (9th Cir.1982); *see Kennedy*, 887 F.2d at 924; *Benigni*, 853 F.2d at 1524; *Brown v. Link Belt Corp.*, 565 F.2d 1107, 1110 n. 8 (9th Cir.1977). The trial court has broad discretion in formulating instructions, *Benigni*, 853 F.2d at 1524, and a failure to give a requested jury instruction is not reversible error so long as the instructions adequately cover the principles involved, *Van Cleef v. Airoflex Corp.*, 657 F.2d 1094, 1098–99 (9th Cir.

fied as to the penological need for the anal search policy. In addition, the defendants

called penological experts to justify the searches.

1981); *see also Ragsdell,* 688 F.2d at 1282–83 ("Instructions need not be faultless.... If the instructions given allow a jury to determine intelligently the questions presented, a judgment will not be disturbed simply because further amplification was refused.").

The court finds that the instructions given the jury in this case, when viewed as a whole, adequately apprised the jurors as to the relevant law. Indeed, at no time did the court offer an instruction that would have required the jurors to apply a "least restrictive alternative" test. In harmony with the Court's holding in *Turner,* the jury was left to decide for itself what weight should be given the various alternatives and whether the offered alternatives were sufficiently "obvious" or "easy" to negate a finding of a legitimate penological purpose. *See Turner,* 482 U.S. at 90–91, 107 S.Ct. at 2262–63.

The defendants point to certain questions propounded to the court during the jury's deliberations as evidence that the jurors were confused on this issue. The note in question stated:

TO: Judge Quackenbush

FROM: Jury

1. What technology/methods existed on Jan. 17, 1986 to accomplish the discovery of contraband secreted in anal cavities—

The basic question being if an alternative to digital probes existed outside of W.S.P. would that mean that WSP's use of digital probes was not for legitimate penological purpose....

2. Re: exhibit # 114 item # 5—was a "laxative" a viable option....

Ct.Rec. 54. After consultation with counsel, the court responded as follows:

Your questions address the ultimate issues which you must decide and therefore I cannot respond to the questions. Ct.Rec. 56.

Here again, the court simply left the question to the judgment of the triers of fact. The questions submitted by the jurors involved matters that were the subject of testimony presented at trial. A substantial amount of evidence was introduced regarding the various methods considered for detecting contraband, including the use of low-level radiation X-rays. At that time, the defendants were given the opportunity to explain why those methods were rejected in favor of the digital probe procedure. Several witnesses testified that they were under the impression that the use of low-level X-rays would violate state statutory and regulatory provisions.

The jury was fully aware of the pros and cons of the various options, and the court's instructions simply left the matter to the jurors' respective memories and judgments. Anything more in response to the jurors' question would have amounted to inappropriate judicial comment on the evidence presented. A reasonable person could not even infer from the instructions that the least intrusive means were required. The jury was told to determine whether the procedure was adopted for a legitimate penological purpose. Because the court finds nothing in the initial or supplemental instructions that conflicts with the Court's holding in *Turner,* and because the jury was adequately advised as to the relevant law to be applied, the defendants' motion for judgment notwithstanding the verdict or a new trial based on the court's refusal to propound the defendants' jury instruction is HEREBY DENIED.

## D. Qualified Immunity

■ The defendants next contend that they are entitled to a verdict in their favor or a new trial based on the doctrine of qualified immunity. The gravamen of the defendants' argument is that the issue of qualified immunity was bifurcated from the issue of liability at trial and, therefore, was never fully and fairly litigated.

The court finds that, in light of the jury's express findings as to lack of legitimate penological purpose, the defendants are precluded, as a matter of law, from further litigating the qualified immunity issue. To understand the court's ruling, one must first consider what was necessarily decided by the jury in this case.

In determining what was necessarily decided the court should " 'examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter.' " *Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970) (citation omitted). "The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' " *Id.* (quoting *Sealfon v. United States*, 332 U.S. 575, 579, 68 S.Ct. 237, 239, 92 L.Ed. 180 (1948)). Such an exercise ultimately leads this court to conclude that the specific factual findings made by the jury, as borne out by the verdict, necessarily preclude the defendants from raising the qualified immunity defense.

The Ninth Circuit in *Tribble* held that, at the time Wetmore and Tribble were subjected to the anal probes, the law was clearly established that such a procedure must be reasonably related to legitimate penological needs. *Tribble*, 860 F.2d at 325. In view of the jury's findings that the defendants' adoption and use of the rectal probes were not for legitimate penological purposes, no reasonable person, under those circumstances, could have believed that the anal probes were proper. *Id.* at 328.

In the present case, the only logical inference that can be drawn from the jury's verdict is that the digital probe policy was not enacted for a legitimate penological purpose since the instructions made such a finding a condition precedent to recovery by the plaintiff. The bulk of the defendants' case at trial consisted of testimony pertaining to the perceived need and justification for the policy's enactment. Numerous defense witnesses testified as to the alleged problems associated with the smuggling of contraband into the institution, prison conditions that existed prior to the construction of the IMU, and the asserted need to conduct the probe searches as a matter of course, without any belief or suspicion whatsoever that the inmate was secreting contraband in his rectum. Furthermore, the jury instructions forced the jury to concentrate exclusively on the issue whether the search was performed for a legitimate penological purpose. Instruction No. 7 framed this very question by instructing the jury that the plaintiff was entitled to recover unless the defendants established that the probe search was performed in furtherance of such a goal. By their verdict, the jurors rejected the claims of the defendants that they were motivated by legitimate reasons. That answer was in the form of a verdict for the plaintiff.

Of added significance is the fact that the jury ruled in favor of Robert Zabor, the registered nurse who performed the probe search. This finding rules out any possibility that the verdict was based on the jury's belief that the search itself was conducted in an abusive manner. The jury simply rejected the defendants' asserted justification for enacting the policy. Therefore, taking all these factors into consideration— the testimony offered at trial, the jury instructions, and the result—the only rational interpretation is that the jury found the policy to have been enacted without a legitimate penological purpose.

In terms of qualified immunity, the import of the jury's finding is significant. In *Tribble*, the Ninth Circuit recognized that the digital rectal search procedure is "highly intrusive and humiliating," *id.* at 324, a description that this court adopts without hesitation. Indeed, as stated above, the search is so invasive that the burden is on the state to show that it was conducted pursuant to a legitimate penological purpose. *Id.* at 324–25 & n. 6; *Lilly*, 576 F.2d at 1246; *see also Ruiz v. Estelle*, 503 F.Supp. 1265, 1372 n. 207 (S.D.Tex.1980) (burden on state to show that "strip search" was necessitated by a legitimate penological need); *accord Turner*, 482 U.S. at 89, 107 S.Ct. at 2261 (prison regulation that infringes inmates' constitutional rights must be reasonably related to legitimate penological goal). Moreover, the *Tribble* court expressly held that this rule—that the digital probe search policy must be reasonably related to a legitimate penological need—was clearly established law during the relevant period. *Tribble*, 860 F.2d at 325.

Because it was clearly established law that the policy could be found constitutional only by a showing of legitimate penological need, the policymaker defendants were entitled to qualified immunity only if it was shown that the searches were "reasonably related to a legitimate penological goal, or that the defendants reasonably could have believed that the searches were conducted to further such a purpose." *Tribble,* 860 F.2d at 328; *see Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The jury's finding that the policy was without a legitimate penological justification is fatal to the defendants' qualified immunity claim.

Obviously, a regulation so adopted, with such invasive results, cannot be "reasonably related" to any valid purpose. Furthermore, because it was found that the policy was enacted by the defendants without a legitimate objective, the court concludes that no rational trier of fact could thereafter find that the defendants reasonably could have believed that the rectal probe policy was implemented to further such a goal. *Accord Kennedy,* 887 F.2d at 931 (directed verdict is proper if there is only one reasonable conclusion a jury could reach on the issue of qualified immunity). The latter finding would be in direct conflict with, and is therefore precluded by, the former. Thus, the defendants' argument that these precise issues were not submitted to the jury is without merit given that the findings made by that jury preclude the qualified immunity defense. The issue was *necessarily* decided by the jury after the defendants were given a full and fair opportunity to prove that the policy was justified by a legitimate penological objective. Accordingly, the defendant's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial based on the qualified immunity issue is HEREBY DENIED.

### E. Evidentiary Rulings

■ Finally, the defendants argue that the court erred in excluding from evidence certain photographs and a display board depicting representative samples of contraband recovered from within the confines of the Washington State Penitentiary and that allegedly were *capable* of being secreted in an inmate's anal cavity. The defendants concede now, as they did at trial, that the offered items were not necessarily found "keistered" in any inmate's rectum. They contend, however, that the mere fact that these items are capable of being keistered, as supported by the testimony of their colon rectal specialist, makes them relevant and admissible.

Rule 403 of the Federal Rules of Evidence provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.

Fed.R.Evid. 403. The weighing of the various factors set out in the rule lies within the sound discretion of the trial court. *Cohn v. Papke,* 655 F.2d 191, 194 (9th Cir.1981).

After again considering the display board evidence offered by the defendants, the court is of the firm conviction that its limited probative value was substantially outweighed by the danger of unfair prejudice to the plaintiff. The court considers it significant that none of the proffered items was shown to have been removed from an inmate's anal cavity. The fact that such items may be capable of being "keistered," although lending some support to the argument of relevancy, simply does not outweigh the probability that the jury would have been misled and improperly influenced by the defendant's "board of horrors." Moreover, the evidence would have been cumulative. From the testimony of Dr. Medwell, the defendant's colon/rectal expert, the jury was well aware of the varying types and sizes of items that could be concealed in an individual's anal cavity. The demonstrative items only would have served to mislead the jury, with few reciprocal probative benefits. Accordingly, the defendant's motion for a new trial based on

alleged improper evidentiary rulings is HEREBY DENIED.

IT IS HEREBY ORDERED:

1. The defendants' Motion for Judgment Notwithstanding the Verdict (Ct.Rec. 63) is HEREBY DENIED.

2. The defendants' Motion for a New Trial (Ct. Rec. 63) is HEREBY DENIED.

IT IS SO ORDERED. The Clerk is hereby directed to enter this Order and furnish copies to counsel.